UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
UNITED STATES OF AMERICA,       :
                                :
v.                              :                **ORDER**
                                :
ROCCO ROMEO,                    :                S1 19 CR 586 (VB)
                    Defendant.  :
--------------------------------------------------------x

     By motion dated February 14, 2023 (Doc. #71), defendant Rocco Romeo, proceeding pro se, seeks to enjoin the government from forfeiting a specific asset pursuant to a Preliminary Order of Forfeiture as to Substitute Assets (the "Substitute Asset Order"), dated December 2, 2022 (Doc. #70). The government filed a memorandum in opposition to the motion (Doc. #74), and defendant filed a memorandum in response to the opposition (Doc. #76) and a supplemental affidavit (Doc. #78).[1]

     Upon due consideration of all of the parties' submissions, and for the reasons that follow, defendant's motion is DENIED.

Background

     From 2015 to 2018, defendant, the head of the information technology ("IT") department at a New Jersey law firm, planned and executed an elaborate scheme to defraud the firm by causing the firm to pay nearly $900,000 for IT services that were never provided. Defendant

---

[1] On March 27, 2023, defendant submitted a "motion for a show cause hearing and order why the government should not be held in contempt for failure to provide service and proof to this honorable court and Romeo." (Doc. #79). Defendant contends the government failed to comply with the Court's order of March 14, 2023, requiring the government to either serve a copy of its memorandum in opposition on defendant or, if it did serve the memorandum on defendant, file proof of service of same. (Doc. #75). In response, by letter dated March 17, 2023, AUSA Andrews advised the Court that shortly after defendant filed his initial motion he (AUSA Andrews) spoke to Michael Rubas, Esq., who had represented defendant during the pendency of the criminal case, and who continues to receive ECF notifications. Mr. Rubas told AUSA Andrews that he (Mr. Rubas) would speak with and coordinate with defendant. Accordingly, AUSA Andrews filed the government's memorandum only on ECF on the understanding that Mr. Rubas would transmit the memorandum to defendant. In fact, defendant did receive the government's memorandum because defendant filed a response thereto on March 14, 2023. (Doc. #76). Accordingly, defendant's "motion for a show cause hearing" is denied as moot.

     Defendant also submitted an application to proceed without prepaying fees or costs. (Doc. #72). Because no fees or costs were required with respect to the instant motion, that application is also denied as moot.

1

directed those payments to accounts registered to fictitious companies and a shell corporation he controlled, and ultimately used the proceeds to pay personal expenses.

On July 31, 2020, pursuant to a plea agreement, defendant waived indictment and pleaded guilty to a two-count superseding information charging wire fraud (Count One) and money laundering (Count Two).  The superseding information contained a forfeiture allegation with respect to both counts, which provided:  "As a result of committing [the] offenses charged in Counts One and Two," defendant "shall forfeit to the United States . . . any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses."  (Doc. #43).

The forfeiture allegation also contained a substitute asset provision, which provided:  "If any of the above-described forfeitable property, as a result of any act or omission of the defendant . . . cannot be located upon the exercise of due diligence . . . it is the intent of the United States, pursuant to [21 U.S.C. § 853(p)], to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property."  (Doc. #43).

Defendant admitted the forfeiture allegation both in the plea agreement and when he entered his guilty plea.

The plea agreement provided that "defendant hereby admits the forfeiture allegation with respect to Counts One and Two of the Superseding Information and agrees to forfeit to the United States . . . a sum of money equal to $855,629.76 in United States currency, representing the amount of proceeds traceable to the commission of said offense."  In the plea agreement, defendant also consented to the entry of a consent order of forfeiture.

And when he entered his guilty plea, defendant admitted the forfeiture allegation in the superseding information, and agreed to forfeit to the United States any property constituting or derived from proceeds obtained directly or indirectly as a result of the offenses charged in Counts One and Two, including but not limited to a sum of money equal to $855,629.76 in United States currency.

Separate and apart from what he agreed to forfeit to the United States, defendant also agreed in the plea agreement to make restitution in the amount of $855,629.76, and further agreed that his restitution obligation would be made a condition of supervised release.

On February 4, 2021, defendant was sentenced to 24 months' imprisonment, to be followed by three years of supervised release.  He was also ordered to make restitution to the victim in the amount of $855,629.76, which was expressly made a condition of supervised release.  (Doc. #61).  In the judgment of conviction, as well as in a separate Order of Restitution, defendant was ordered to pay restitution in monthly installments of 20% of his gross monthly income during the term of supervised release, although the full restitution amount would remain due and payable until twenty years after the entry of judgment.  (Doc. #62).

At sentencing, defendant was also ordered to forfeit a sum of money equal to $855,629.76 in United States currency.  (Doc. #61).  On February 12, 2021, as contemplated by the parties' plea agreement, the Court issued a Consent Preliminary Order of Forfeiture/Money

Judgment (the "Money Judgment"), which was agreed and consented to by defendant and made a part of the sentence, and which provided that the forfeiture amount represented (i) the proceeds traceable to the wire fraud offense charged in Count One that defendant personally obtained, and (ii) the property involved in the money laundering offense charged in Count Two.  (Doc. #65).

The Money Judgment also provided:  "Defendant admits that, as a result of acts and/or admissions of the Defendant, the proceeds traceable to the offense charged in Count One . . . that the Defendant personally obtained and property involved in Count Two . . . cannot be located upon the exercise of due diligence."  And it further provided that, pursuant to 21 U.S.C. § 853(p), "the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment."  (Doc. #65).

Defendant has not satisfied any portion of the Money Judgment.  Accordingly, pursuant to Fed. R. Crim. P. 32.2(e) and 21 U.S.C. § 853(p), the government sought the entry of the Substitute Asset Order, seeking to forfeit $524,657.49 in United States currency held by Atlas Certified, LLC, representing defendant's membership interest in that entity, to partially satisfy the Money Judgment.  (Doc. #68).

In support of the motion, the government submitted a sworn declaration of FBI Special Agent Robert M. Cappadona, the FBI's New York Field Office's Asset Forfeiture Coordinator assigned to the Forfeiture Asset Seizure Team.  (Doc. #69).  According to the declaration, Agent Cappadona has received extensive training in the investigation of, among other things, money laundering violations, as well as in investigative techniques used to identify assets subject to criminal forfeiture.  In addition to referencing the Money Judgment and the substitute asset provision of the forfeiture allegation, Agent Cappadona stated that, utilizing the Lexis Advance law enforcement database, he conducted an investigation in an attempt to locate any assets of defendant that might constitute proceeds of the offense.  Agent Cappadona was unable to locate any such assets.  Agent Cappadona did, however, locate defendant's membership interest in Atlas Certified, LLC, as a substitute asset (the "Substitute Asset").

Based on the government's motion and the declaration of Agent Cappadona, the Court issued the Substitute Asset Order on December 2, 2022, ordering the forfeiture to the United States of all of defendant's right, title, and interest in the Substitute Asset in partial satisfaction of the Money Judgment.  The Substitute Asset Order also set forth the procedures to be followed in forfeiting the Substitute Asset, pursuant to 21 U.S.C. § 853(n).

Discussion

Fairly construed, defendant's motion to enjoin the forfeiture of the Substitute Asset contains the following arguments: (i) only those assets that are involved in the offense or traceable to the proceeds of the offense are forfeitable, which would not include the Substitute Asset; (ii) at sentencing, defendant was only ordered to forfeit 20% of his post-conviction income, not all future assets; (iii) defendant did not have prior notice of the government's motion seeking forfeiture of the Substitute Asset; and (iv) the forfeiture is barred by the Constitution's Double Jeopardy Clause or otherwise constitutes an excessive fine under the Eighth Amendment.

None of defendant's arguments has merit.

First, forfeiture of the Substitute Asset is authorized by 21 U.S.C. 853(p), which provides that the Court "shall order the forfeiture of any other property of the defendant, up to the value of any property" that is otherwise directly forfeitable, provided that "as a result of any act or omission of the defendant" any directly forfeitable property "cannot be located upon the exercise of due diligence."

Here, in the Money Judgment, entered on defendant's consent, defendant admitted that "as a result of acts and/or admissions of the Defendant, the proceeds traceable to the [wire fraud] offense . . . that the Defendant personally obtained and property involved in [the money laundering offense] cannot be located upon the exercise of due diligence." (Doc. #65). Moreover, Agent Cappadona, an experienced and highly trained member of the FBI's forfeiture asset seizure team, stated under oath that he utilized a law enforcement database called Lexis Advance to conduct a search for directly forfeitable assets, but could not locate any. The Court finds Agent Cappadona exercised due diligence in that search. In light of defendant's admission in the Money Judgment and the efforts made by Agent Cappadona, the government met its burden to provide a sufficient factual basis for the Court to order the forfeiture of the Substitute Asset pursuant to Section 853(p). See United States v. Malley, 2022 WL 2764018, at *2 (S.D.N.Y. July15, 2022).

Second, defendant is not correct that he was only ordered to forfeit 20% of his post-conviction income. Defendant admitted the forfeiture allegation in the information, and agreed to forfeit a total of $855,629.76. In addition, forfeiture of substitute assets was contemplated at the time of his guilty plea and sentence—the superseding information's forfeiture allegation contained a substitute asset provision, and the Money Judgment provided that "the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment."

Defendant may be conflating his forfeiture obligation with his obligation to make restitution. It is true that defendant was ordered to make restitution to the victim in the same amount as the amount of the forfeiture order, and was ordered to make monthly restitution payments during his period of supervised release of 20% of his gross monthly income (although the full amount of the restitution amount would remain due). However, restitution and forfeiture are entirely different remedies, authorized by different statutes, and thus a court can impose both at the time of sentence. See United States v. Kalish, 626 F.3d 165, 169-70 (2d Cir. 2010). "Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place." United States v. Peters, 732 F.3d 93, 101 (2d Cir. 2013); accord, United States v. Bodouva, 853 F.3d 76, 78-79 (2d Cir. 2017). Defendant's obligation to pay 20% of his gross monthly income toward restitution thus has nothing to do with his forfeiture obligation.

Third, defendant did have prior notice of the government's right to seek forfeiture of the Substitute Asset. The government's intention to seek forfeiture of substitute assets, and its authority to do so, was explicitly set forth in the superseding information's forfeiture allegation. See Fed. R. Crim. P. 32.2(a). And the Money Judgment, entered on defendant's consent, provided that, pursuant to 21 U.S.C. § 853(p), "the United States is authorized to seek forfeiture of substitute assets of the Defendant up to the uncollected amount of the Money Judgment." No

further notice prior to the forfeiture of the Substitute Asset was required. In any event, defendant did contest the entry of the Substitute Asset Order by filing the instant motion.

Finally, the Substitute Asset Order does not implicate either the Double Jeopardy Clause or the excessive fines clause of the Eighth Amendment. The forfeiture order here is part and parcel of defendant's sentence in this case, and thus is plainly not a second punishment for the same offense. As such, it does not constitute double jeopardy. See United States v. Smith, 656 F.3d 821, 828 (8th Cir. 2011). And since the forfeiture of the Substitute Asset is proportional to the gravity of the offense committed (after all, defendant fraudulently obtained $855,629.76 from his employer), it does not constitute an excessive punishment, fine or otherwise. See United States v. Bajakajian, 524 U.S. 321, 334 (1997). Indeed, the Money Judgment subjects defendant to a forfeiture of $855,629.76, and the value of the Substitute Asset is $524,657.49, which would only partially satisfy the Money Judgment.

Accordingly, defendant's motion to enjoin the government from forfeiting the Substitute Asset must be denied.

## CONCLUSION

Defendant's motion is DENIED.

The Clerk is instructed to terminate all open motions. (Docs. ##71, 72, 79).

Chambers will mail a copy of this Order to defendant at the following address:

Rocco Romeo
3 Paul Court
Washingtonville, NY 10992

Dated: March 27, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge